IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KATHLEEN WILSON </br></br>    Plaintiff, </br></br> vs. </br></br> DELTA AIRLINES, INC., Successor to NORTHWEST AIRLINES, INC., NORTHWEST AIRLINES, INC. and JOHN DOE, </br></br>    Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Docket No: 09-2687 </br> ) </br> ) **JURY DEMANDED** </br> ) </br> ) </br> ) </br> ) </br> ) |

## AMENDED COMPLAINT

Plaintiff, Kathleen Wilson ("Plaintiff") hereby sues Defendant, Delta Airlines ("Delta"), a foreign corporation, successor to Northwest Airlines, Inc. ("NWA"). Delta and NWA recently merged with Delta the surviving airline with its principal place of business in Atlanta, Georgia.

Plaintiff also hereby sues Defendant, Northwest Airlines, Inc., a foreign corporation with its principal place of business in Eagan, Minnesota and which has merged with Delta, Delta being the surviving corporation.

Plaintiff also hereby sues Defendant John Doe ("John Doe") whose identity is unknown to Plaintiff. John Doe is a white male, next to whom Plaintiff was seated as set forth below in greater detail.

### INTRODUCTION

1. Plaintiff filed her original Complaint on October 26, 2009 (Dk #1).

2. Delta was served on October 30, 2009 (Dk #6) and filed its Motion to Dismiss (Dk #9) on December 17, 2009.

Page 1 of 16

3. Delta, in its Motion, has raised the issue of NWA being a real party in interest.

4. Less than 120 days have elapsed from the date of service on Delta.

5. NWA will not be prejudiced by this Amended Complaint.

6. No responsive pleading has been filed by any Defendant.

7. Under Rule 15(a)(1)(A), F.R.C.P., Plaintiff may amend as a matter of course.

8. Plaintiff, pursuant to Rule 10, F.R.C.P., incorporates herein said Complaint, as well as all of her pleadings in response to Delta's Motion to Dismiss.

9. This action arises from NWA's and Delta's permitting, failing to prevent and correct racial discrimination and abuse against Plaintiff on October 28, 2008 as she boarded a Northwest Airline Flight 284 at the Memphis International Airport awaiting departure from Memphis, Tennessee bound for Detroit Michigan, during which NWA employees permitted racially charged slurs, and physical and emotional abuse to be directed against Plaintiff, an African-American female; and, thereafter, knowingly failed to take corrective action against the Caucasian passenger intentionally engaging in virulent racial abuse and discrimination against Plaintiff.

10. Plaintiff possessed a ticket on NWA in her name providing for passage from Memphis, Tennessee to Detroit, Michigan on October 28, 2008.

11. NWA has no reason, legitimate nondiscriminatory or otherwise, to justify its failure to prevent or correct the abusive racially discriminatory treatment of Plaintiff immediately brought to its attention by Plaintiff. Rather NWA's actions were motivated by Plaintiff's race, color, ethnicity, alienage, ancestry, and/or national origin.

12. Federal law expressly provides that an "air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin,

or ancestry: 49 U.S.C.A. §40127(a).

13. Plaintiff brings this action under 42 U.S.C.A. §1981, Title VI of the Civil Rights Act of 1964 (42 U.S.C.A. §2000d), 42 U.S.C. §1985, and asserts state tort claims of intentional infliction of emotional distress and assault and battery and breach of contract. Plaintiff seeks compensatory and punitive damages and injunctive relief to prevent future unlawful discrimination by NWA.

14. As a result of NWA's racially discriminatory acts because of her race, Plaintiff was denied the right to make, enforce and enjoy the expected benefits of a contract and was subjected to unlawful discrimination.

15. Plaintiff avers Delta is NWA's successor, is responsible for its acts; and is the only entity which exists that can provide the relief prayed for.

## JURISDICTION AND VENUE

16. Venue is proper under 28 U.S.C.A. Section 1391 because:

    a. Delta and NWA maintain a large business presence in this judicial district, has substantial contacts in this district and is subject to personal jurisdiction in this district at the time of the commencement of this action.

    b. Delta's agent for service of process is Corporation Service Company, Nashville, Tennessee.

    c. NWA's agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929.

    d. Plaintiff entered into a contract with NWA when she purchased her airline ticket.

    e. There is no satisfactory remedy available to Plaintiff that may be more

conveniently brought in a jurisdiction other than this judicial district.

    f.    All relevant factors of private and public interest favor this judicial district wherein the events herein described occurred, as the proper forum, and under Federal law there is a presumption against disturbing Plaintiff's initial forum choice even where parties are foreign.

    g.    The events giving rise to this action incurred in this district.

    h.    This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. §1367.

    i.    Factors of public interest weigh in favor of this judicial district as the proper forum.

## PARTIES

17.    Plaintiff, an African-American female, is a resident of Michigan, is over the age of eighteen (18) years, and is otherwise sui juris.

18.    Delta is a foreign corporation incorporated in Delaware with its principal place of business in Atlanta, Georgia. It advertises itself as one of the world's largest airline companies providing airline flights throughout the world. Delta conducts business throughout the world and maintains a large business presence in this District.

19.    NWA is a foreign corporation incorporated into Minnesota with its principal place of business in Eagan, Minnesota. NWA conducted business throughout the world and maintained a large business presence in this District.

## GENERAL ALLEGATIONS

20.    Delta/NWA employ flight attendants on its passenger airliners to assist in the transportation of its customers on flights.

21.    All major airlines, including Delta and NWA, are required by law to provide

flight attendants for the safety and security of the traveling public. Although the primary job of the flight attendants is to ensure that security and safety regulations are followed, attendants also try to make flights comfortable and enjoyable for passengers.

22. At all material times, "Jane Roe" and "John Roe" whose identities are unknown to Plaintiff, but on information and belief will be known to Defendants, were NWA flight attendants and employees and/or agents of Delta/NWA, acting within the scope of their employment.

23. On October 28, 2008, Plaintiff and a colleague attended the Freedom Award Program of the National Civil Rights Museum in Memphis, Tennessee.

24. The next day, October 29, 2008, Plaintiff boarded Northwest Flight #284 bound from Memphis, Tennessee to Detroit, Michigan, on her way to her home in Michigan.

25. Plaintiff and her colleague were returning to their homes on the same flight.

26. Plaintiff boarded Northwest Flight 284 at the Memphis International Airport and by reason of her Frequent Flyer status, was seated in the first class compartment, while the colleague with whom she was traveling, was seated at the bulkhead, one row behind Plaintiff.

27. Plaintiff was assigned aisle seat 6-B and was seated next to John Doe, who was already seated in the adjacent window seat. As Plaintiff took her seat, she gave John Doe a courteous nod to acknowledge his presence.

28. Plaintiff placed her briefcase in her assigned seat, and a can of soda on the center median or armrest separating the seats. As she bent over to place her purse under the seat in front of her, John Doe bellowed: "Move it, you nig…"

29. John Doe repeated himself, ordering Plaintiff to "Move it, I said" and began to kick her purse with his foot.

30. Plaintiff was extremely upset, embarrassed and frightened. Her heart raced and she began to perspire. She placed her briefcase in the overhead bin and sat down, and told John Doe to stop kicking her purse.

31. As Plaintiff looked around, she saw the other passengers were watching. She was upset, humiliated and embarrassed. The colleague with whom Plaintiff was traveling stood up to ask if Plaintiff was okay.

32. One or more fellow passengers traveling on Flight 284 with Plaintiff witnessed the racist and discriminatory remarks and abusive behavior.

33. The flight attendant abruptly told Plaintiff's colleague to sit down and warned her not to come into first class though she was but one row behind Plaintiff.
Plaintiff was extremely distressed, and at that point John Doe began to physically elbow her to try and nudge her away from the median where her soda had been placed. In doing so, he knocked the soda into Plaintiff's lap. Plaintiff was then drenched in soda, as well as perspiration.

34. The flight attendants who were then in the first class cabin were in clear and unimpeded earshot and well as eyesight of everything that had occurred. Nevertheless, Plaintiff saw them quickly divert their eyes and begin to busy themselves in the galley area of the aircraft. They did nothing to relieve the racially charged situation caused by John Doe's hostile harassment and physical abuse of Plaintiff.

35. Plaintiff rose out of her seat and walked down the aisle toward the cockpit, continuing to be frightened, embarrassed, humiliated and extremely distressed. As she was within speaking distance of the attendants, she asked why they had not come to her aid, and repeated what had happened, although they had been in plain sight and could easily see and hear the foregoing events as they occurred.

36. Plaintiff requested an Air Marshall in order to report that she had been assaulted and racially harassed, and was afraid of John Doe; and to seek help in bringing an end to the abusive and harassing conduct directed toward her in that the flight attendants were doing nothing to assist Plaintiff.

37. The two attendants, one male and one female, looked back to Plaintiff's seat, with the female cabin attendant asking Plaintiff if she were referring to John Doe, the "older gentleman" and noting that he is "kind of cranky." The male cabin attendant mentioned that he thought John Doe might have been "hard of hearing." Once again, they provided Plaintiff with no assurance that she could return to her seat safely and be free from further racial harassment and physical abuse. These attendants refused to summon an Air Marshall or security.

38. Notwithstanding that those utterances had nothing to do with what had transpired, the reply of the flight attendants was very firm, stern and unyielding. Plaintiff was told summarily by the female cabin attendant to sit down in an empty seat in the first row and window seat, and was told abruptly and curtly to "sit down right there, we are about to take off." She spoke down to Plaintiff as if Plaintiff were a misbehaving child and as if Plaintiff had been disruptive, instead of John Doe.

39. Rather than demand that the offending John Doe move or be removed from the aircraft because of his unconscionable racially hostile and physically abusive conduct, it was Plaintiff who was inconvenienced and made to move. The aircraft was still at the gate and had not begun to leave for take off.

40. The aircraft was still at the gate and had not begun to leave the gate, when the passenger arrived in whose seat Plaintiff had been directed to sit by the flight attendant. He inquired about why he had to "sit back there," pointing to Plaintiff's seat in Aisle 6. In response,

the female cabin attendant replied: "Her seatmate is a little cranky."

41. Throughout the flight, Plaintiff remained fearful, humiliated, embarrassed and extraordinarily emotionally distressed. The flight attendants declined to take any corrective action whatsoever against John Doe who had, without provocation, abusively and physically assaulted Plaintiff.

42. For the remainder of the flight, Plaintiff was frightened, humiliated, embarrassed; her heart raced and her head began to throb, and she experienced the onset of a severe and debilitating migraine headache which impaired her vision and left the side of her face numb and twitching, all as a direct and proximate cause of the verbal and physical abuse she had experienced and of the absence of intervention or any demonstration of concern for her plight by the cabin crew.

43. Plaintiff began to cry and felt that she was helpless and at the mercy of the airline and the flight attendants who were indifferent to the hostile treatment and physical abuse Plaintiff had just experienced because of her race.

44. Shortly following Plaintiff's return to her destination, NWA was contacted about the incident. In response, Plaintiff received an e-mail dated October 31, 2008 from Julie Hagen-Showers, Senior Vice President, In-Flight Services, Northwest Airlines, noting that Plaintiff's experience had been brought to her attention. The e-mail states that:

> We are in the process of conducting an internal investigation into this incident. In order to properly address this situation, we are contacting each member of the flight crew.... I want to assure you that this situation has been escalated to the appropriate staff for internal review. <u>I am truly sorry that in this instance you did not receive the service you expected from our in-flight staff, as we expect our employees to be helpful and professional at all times. We hope to be able to provide additional feedback to you early next week regarding this incident.</u> Ms. Wilson, I can only imagine how upsetting and uncomfortable the situation must have been for you. (Emphasis added.)

45. Despite the foregoing representations, the only feedback Plaintiff received was a November 21, 2008 letter over the signature of Don Hassenger, Northwest Airlines, Inc., but which appeared on letterhead bearing both NWA and Delta logos (see Exhibit A, attached hereto), which was nothing more than a recitation of Northwest's selection process for flight attendant positions, as well as their required training. Beyond that, the letter stated:

> I again apologize for this regrettable incident. Please be assured that we will take appropriate action with the crew in order to insure that they understand our corporate expectations and that their future actions are expected to be congruent with our ongoing commitment to diversity. (Emphasis added.)

46. Thereafter, notwithstanding a number of unsuccessful efforts to learn the outcome of the alleged internal investigation conducted by NWA, the next and last contact related to this matter received by Plaintiff was a telephone call from Ms. Joanne Smith, Senior Vice President, In-Flight Services, Delta Airlines, Inc. That conversation yielded no information of substance with respect to the internal investigation previously promised by NWA, which by this time had already announced its merger with Delta Airlines. Inc., nor did Ms. Smith suggest any remedial action to assure Plaintiff that such abusive and hostile conduct would be promptly addressed by Delta or by NWA.

47. Subsequently, Plaintiff received a telephone call from Delta, advising her "that it had completed its investigation".

48. At no time did Plaintiff express in words or imply by her physical behavior that she sought to provoke or engage in hostile words or a physical altercation with John Doe.

During the events herein alleged, the flight attendants in the first class cabin stood by and did nothing to intervene and prevent or otherwise correct the discriminatory and physically abusive conduct experienced by Plaintiff at the hand of John Doe, thereby breaching their duties and responsibilities as on-duty flight attendants.

49. As a result of the foregoing events, Plaintiff experienced and has continued to endure fear, humiliation, embarrassment, mental pain and suffering.

50. NWA's and Delta's actions showed reckless disregard for Plaintiff's civil and constitutional rights.

## CLAIMS FOR RELIEF

### COUNT I
### DISCRIMINATION UNDER 42 U.S.C.A. §1981

51. Plaintiff re-alleges the allegations set forth above in paragraphs 1 through 50, as if set forth herein in full.

52. On October 28, 2008, and at all times relevant to the events described above, the flight attendants for Northwest Airline Flight 284 were employees, agents, and/or representatives of NWA and/or Delta and acting within the scope of their employment.

53. The discriminatory practices described above were carried out.

   a. with the knowledge and ratification of NWA/Delta;

   b. under NWA/Delta's authority, control, and supervision; and/or

   c. within the scope of employees' employment.

54. NWA/Delta is liable for the unlawful acts of its employees, agents, and/or representatives directly and/or under the doctrine of respondeat superior.

55. NWA/Delta engaged in intentional discrimination based on Plaintiff's race, color and caused Plaintiff to suffer deprivation of her right to make and enforce contracts.

56. NWA/Delta's actions violated 42 U.S.C.A. §1981.

57. NWA/Delta's conduct caused Plaintiff to suffer damages, including humiliation, shame, despair, embarrassment, mental pain, and anguish.

**WHEREFORE** Plaintiff demands compensatory damages in an amount to be determined by the jury.

## COUNT II
## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A. §2000d

58. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59. On information and belief, NWA/Delta is the recipient of federal financial assistance. NWA/Delta engaged in intentional discrimination based on Plaintiff's race and color.

60. NWA/Delta's actions violated Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. §2000d.

61. NWA/Delta's conduct caused Plaintiff to suffer damages, including humiliation, shame, despair, embarrassment, mental pain and anguish.

**WHEREFORE**, Plaintiff demands compensatory damages in an amount to be determined by a jury.

## COUNT III
## CLAIM FOR ASSAULT AND BATTERY AGAINST DEFENDANT JOHN DOE

62. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 61 as if specifically set forth herein.

63. On or about October 28, 2008, John Doe elbowed Plaintiff, kicked her purse and knocked over a soda onto her person, all without provocation or reason other than John Doe's discriminatory attitude toward Plaintiff because of her race.

64. John Doe's actions created a fear of imminent peril for Plaintiff.

**WHEREFORE** as a further direct and proximate result of John Doe's assault and

battery, Plaintiff suffered and continues to suffer severe emotional distress for which John Doe is responsible and should be held liable.

## COUNT IV
## BREACH OF CONTRACT

65. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 64 as if specifically set forth herein.

66. NWA/Delta's actions violated its contract of safe non-discriminatory travel carriage.

67. Wherefore, Plaintiff demands damages in an amount to be determined by the jury.

## COUNT V
## CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S. §1985
## AS TO ALL DEFENDANTS

68. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 67 as if specifically set forth herein.

69. John Doe, as an individual, is capable of conspiring with NWA/Delta and its agents.

70. By the acts described above and in Count VI, John Doe, Jane Roe and John Roe conspired with each other, individually and on behalf of NWA/Delta, with racially discriminatory animus to deprive and impair Plaintiff of equal protection under the law and equal privileges and immunities under the law through the impairment and denial of her rights.

71. Wherefore, Plaintiff demands damages in an amount to be determined by the jury.

## COUNT VI
## TORTIOUS INTERFERENCE
## AS TO JOHN DOE; JANE ROE; AND JOHN ROE

72. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 71 as if

specifically set forth herein.

73. As a direct and proximate cause of the above cited conspiracy, Plaintiff has been treated differently than other passengers who are Caucasian; she has been deprived of the benefits of her contract of non-discriminatory carriage; she continues to suffer irreparable injuries relating to embarrassment, degradation, humiliation, emotional stressors, physical pain and mental anguish.

74. Wherefore, Plaintiff demands damages in an amount to be determined by the jury.

## COUNT VII
### INFLICTION OF EMOTIONAL DISTRESS
### AS TO ALL DEFENDANTS

75. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 74 as if specifically set forth herein.

76. The actions of John Doe, Jane Roe and John Roe as recited, *supra*, constitute the tort of infliction of emotional distress, such actions being outrageous, intentional, malicious and/or reckless and in total disregard of both the emotional and physical consequences to Plaintiff.

77. John Doe, Jane Roe, John Roe and NWA/Delta, through the acts of its agents, are liable to Plaintiff for any and all compensatory, consequential and other damages incurred by Plaintiff as a result of their infliction of emotional distress in an amount proven at trial.

## COUNT VIII
### MALICIOUS HARASSMENT
### AS TO ALL DEFENDANTS; JOHN ROE; AND JANE ROE

78. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 77 as if specifically set forth herein.

79. By the acts described above, NWA/Delta, John Doe, Jane Roe and John Roe have

violated T.C.A. §39-17-309, and pursuant to T.C.A. §4-21-701 are liable to Plaintiff for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney fees, costs and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.  Hold that the actions of NWA described above constituted discrimination because of race in violation of 42 U.S.C. §1981 and 49 U.S.C.A. §41705; and that the action of John Doe constituted discrimination because of race in violation of 42 U.S.C. §1981, and assault and battery within the meaning of Tennessee law.

b.  Hold that Delta is liable for NWA's actions described above and in paragraph a, *supra*.

c.  Enter a permanent injunction directing Delta, as the party responsible and/or NWA, to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future.

d.  Award Plaintiff compensatory damages in an amount to be determined at trial to compensate her for being deprived of her right to make and enforce contracts due to her race or color, including damages for fear, mental pain, inconvenience, humiliation, embarrassment and emotional distress as provided under 42 U.S.C.A. §1981

e.  Award Plaintiff punitive or exemplary damages against NWA/Delta under the provisions of 42 U.S.C.A. §1981.

f.  Award Plaintiff reasonable attorney's fees and the costs incurred in this action pursuant to but not limited to 42 U.S.C.A. §1981 as stated in 42 U.S.C.A. §1988.

g.  Award Plaintiff compensatory and punitive damages against John Doe under the

common law tort of assault and battery as authorized by the law of the State of Tennessee.

  h.  Award Plaintiff damages for breach of contract.

  i.  Award Plaintiff damages for tortuous interference with her contract of carriage.

  j.  Award damages to Plaintiff under the provisions of 42 U.S.C. §1985.

  k.  Award damages to Plaintiff for the intentional infliction of emotional distress.

  l.  Award Plaintiff damages for malicious harassment under T.C.A. §4-21-701, including attorney fees and punitive damages.

  m.  Award Plaintiff such other, further or different relief as the Court deems just and proper.

  n.  Hold Delta liable for all of the acts of NWA.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED: January 19, 2010

                Respectfully submitted,

                s/ Stephen H. Biller
                Stephen H. Biller (#7764)
                The Biller Law Firm
                6000 Poplar Avenue, Suite 250
                Memphis, Tennessee 38119
                (901) 261-5454
                sbiller@thebillerfirm.com
                *Attorney for Plaintiff*

## Certificate of Service

    I, Stephen H. Biller, do hereby certify that a true and correct copy of the foregoing was served upon: David Feigelson by electronic mail this the 19th day of January, 2010.

                                                      s/ Stephen H. Biller
                                                    Stephen H. Biller